166 So.2d 196 (1964)
Edward M. CORBETT and Myrtice Corbett, his wife, and Willie Green and Iris Green, his wife, and Airport Inn, Inc., a corporation, Appellants,
v.
EASTERN AIR LINES, INC., a corporation, Northeast Air Lines, Inc., a corporation, United Air Lines, Inc., a corporation, and Delta Air Lines, Inc., a corporation, Appellees.
No. E-279.
District Court of Appeal of Florida. First District.
June 9, 1964.
Rehearing Denied August 5, 1964.
*197 Carlton L. Welch, Jacksonville, for appellants.
Bedell, Bedell & Dittmar, Jacksonville, for appellees.
CARROLL, DONALD K., Judge.
The plaintiffs in an action for damages against four airlines have appealed from a final order entered by the Circuit Court for Duval County dismissing with prejudice their complaint and cause.
The ultimate and principal question before us for determination in this appeal is whether the plaintiffs, who own and operate an airport restaurant on land adjoining a municipal airport, have sufficiently alleged in their initial and proposed amended complaints a cause of action against four commercial airlines whose jet aircraft land, warm up, and commence their take-off on *198 a runway near the said restaurant. A subsidiary question is whether the court erred in denying the plaintiffs' motion to file their amended complaint.
These questions arose out of a complex of pleadings and orders in three separate but related actions filed by the plaintiffs in the said Circuit Court.
The essential background facts concerning these three actions may be summarized as follows:
On July 16, 1962, the plaintiffs filed their first action (Case No. 62-1103-L, according to the numbering system used in the said Circuit Court)  an action for damages against the City of Jacksonville, as the owner and operator of the airport (known as the Imeson Airport), and against three of the four airlines (later adding the fourth). To this complaint the defendants duly filed motions to dismiss. At a hearing on these motions the court granted the plaintiffs' oral motion for leave to file an amended complaint, which they filed on November 1, 1962.
The amended complaint (in Case No. 62-1103-L) named the city and the four airlines as the defendants. The defendants filed motions to dismiss the amended complaint, and, by an order entered on November 21, 1962, the court granted the said motions but also granted to the plaintiffs leave to file a second amended complaint against the said city only. The court states therein that an effect of its order was to eliminate the defendant airlines as parties defendant in the cause, but "without prejudice to the filing by any plaintiff of another suit against either or all of those defendants based on some concept other than the theory of the taking of property without payment of compensation therefor." The court then ordered that the caption of the cause be amended by deleting therefrom the names of all parties defendant except the City of Jacksonville.
Pursuant to the said order (in Case No. 62-1103-L), the plaintiffs on January 17, 1963, filed a second amended complaint against the city only. The city's motion to dismiss the said complaint was denied by an order entered on March 1, 1963. The city then filed its answer to the said complaint and the cause was set for a jury trial on June 17, 1963. Four days before this trial date, however, the plaintiffs and the defendant city filed a stipulation, executed by their attorneys, dismissing the cause without prejudice, pursuant to Rule 1.35 of the Florida Rules of Civil Procedure, 30 F.S.A. On the same day the court entered an order dismissing the cause upon the basis of the said stipulation.
In the meantime, on May 3, 1963, the plaintiffs filed in the said Circuit Court two new actions. The first was a suit in equity (Case No. 63-2246-E) against the City of Jacksonville only, seeking injunctive relief and damages for permitting certain operations by jet aircraft at the airport.
The second action (Case No. 63-822-L) which the plaintiffs filed on May 3, 1963, was an action at law for damages against the four airlines only. This is the action which is directly involved in the present appeal before this court. To the plaintiffs' complaint the four defendant airlines filed their motions to dismiss on the ground that the complaint fails to state a cause of action against the defendants or any of them, and on the further ground that the plaintiffs' claim as set forth therein is in substance identical to that previously made by the same plaintiffs against the same defendants in Case No. 62-1103-L, which was dismissed by the court as against the airlines for failure to state a cause of action against them.
With the above background in mind in regard to the said three actions, the ruling of the Circuit Court in the final order appealed from herein, can be readily understood. That order provides as follows:
"1. The plaintiffs' motion (filed June 20, 1963) for leave to file herein an amended complaint joining as a *199 party defendant City of Jacksonville, Florida, a municipal corporation, is denied. [No logical reason is seen why this suit, in the process of being dismissed for failure of the complaint and amended complaint to state a cause of action against the defendant airlines, should be given new life by the addition of a defendant which would then become the sole defendant, when the plaintiffs only a few days ago, shortly before the scheduled jury trial, dismissed their case No. 62-1103-L against the same City of Jacksonville based on a substantially similar cause of action, and when the plaintiffs now have pending against the same City of Jacksonville their case No. 63-2246-E, filed the same day this case No. 63-822-L was filed, based on a substantially similar purported cause of action.]
"2. The motions (filed May 24 and June 24, 1963) of the defendants Eastern Air Lines, Inc., Northeast Air Lines, Inc., United Air Lines, Inc., and Delta Air Lines, Inc., to dismiss the initial complaint and the amended complaint are granted. Those complaints, and this case, are dismissed with prejudice. [An effect of this is to bar any further action by the plaintiffs against those defendants on any substantially similar cause of action, the plaintiffs having failed in four attempts in case No. 62-1103-L and this case to state a cause of action against those defendants.]"
In their assignments of error filed in this appeal the appellants-plaintiffs assert that the Circuit Court erred: in dismissing the complaint as to the four defendant airlines; in denying the plaintiffs' motion for leave to file the amended complaint, joining as an additional party defendant the City of Jacksonville; in ruling that the amended complaint fails to show a cause of action as to each of the defendants named in the said amended complaint; and in entering the said order "in such form as to amount to a Summary Dismissal of the cause."
Nevertheless, looking at the heart of this appeal, we conceive that the real issues before us for determination are whether the allegations in the plaintiffs' initial complaint, and their proposed amended complaint in the present case (Case No. 63-822-L) are sufficient to state a cause of action against the four defendant airlines, and whether the court abused its discretion in refusing to allow the plaintiffs to file their amended complaint bringing in the City of Jacksonville as an additional party defendant.
In the case at bar the initial complaint was filed in the Circuit Court against the four airlines by the five plaintiffs, who are Edward M. Corbett and Myrtice Corbett, his wife, Willie Green and Iris Green, his wife, and Airport Inn, Inc., a corporation. The four defendants, all corporations, are Eastern Air Lines, Inc., Northeast Air Lines, Inc., United Air Lines, Inc., and Delta Air Lines Inc.
The allegations of the said initial complaint in this cause are substantially as follows:
That the individual plaintiffs are the owners of certain described land in Duval County, on which they operate and manage, through the agency of the plaintiff corporation (of which corporation the plaintiffs Edward M. Corbett and Willie Green each owns fifty percent of the outstanding stock) a certain restaurant business known as "Airport Inn." That the said real property is immediately adjacent to and contiguous with the boundaries of certain land owned by the City of Jacksonville on which the municipality operates an airport or airdrome, commonly known as the Imeson Airport, with facilities for the landing and take-off of commercial and other aircraft.
That on or about the month of March, 1962, each of the defendants commenced a course of operation of landing and take-off of their jet aircraft from the said *200 airport, although neither the said municipality nor any of the defendant airlines had acquired "prescriptive or other rights in and to the taking or the use of the air-space on, above and surrounding" the plaintiffs' property and restaurant business, so that the defendants' acts and intrusion "constitute an act or acts of trespass in and to plaintiffs' property rights and in and to the peaceful use and enjoyment of plaintiffs' said properties."
The plaintiffs in their initial complaint then allege more specifically the defendants' acts constituting "violations of plaintiffs' rights to the peaceful use and enjoyment of their said properties * * *." briefly as follows: that, when the defendant airlines allowed their jet-powered aircraft to land on or take off from a certain runway in the airport, the said aircraft would pass in such low and dangerous proximity to the plaintiffs' property, as to render the use of the same during said approaches dangerous to persons lawfully on the plaintiffs' properties "* * * and would cause said properties to be invaded by whines, roars, aerodynamic noises and vibrations from said landing aircraft, to such degree and extent as to cause apprehension, anxiety and tension to the plaintiffs, their employees, customers and invitees, during such landing and take-off procedures."
The plaintiffs also specifically allege that the defendants' jet-powered aircraft, during the course of preparing for take-off from the northwesterly end of the above-mentioned runway, are so maneuvered that the blast force of the jet engines of such aircraft is directed toward the plaintiffs' property so as to propel air streams from the said engines directly upon their said property, "and to trespass against the same by propelling and directing streams of air, fuel vapor, stones, sand, gravel and other debris against and over plaintiffs' said building and grounds thereof, at high and dangerous speeds and velocities."
The plaintiffs conclude their complaint by alleging that the defendants' "several acts of trespass have so combined in effect as to damage plaintiffs in the use and enjoyment of their said property * * *." and by alleging their loss of patronage and good will in their restaurant business, the damage to their building and land, and the consequential damages of humiliation, embarrassment, anxiety, and mental pain. The plaintiffs ask for exemplary and punitive damages, in addition to compensatory damages, claim damages of the defendant airlines in the sum of $75,000, and demand trial by jury.
In the amended complaint, which the court denied the plaintiffs leave to file in the final order appealed from herein, the allegations against the four airlines are, in our opinion, substantially similar to those in the initial complaint (except for their claiming of $75,000 damages against each of the defendants), so, if the allegations in the initial complaint are insufficient to state a cause of action against the four air-lines, the same is true regarding the proposed amended complaint. The major difference between the two complaints is the joining in the amended complaint of the City of Jacksonville as an additional party defendant. The plaintiffs in their amended complaint also include several paragraphs of allegations against the City of Jacksonville, averring, among other things, that the city should have erected a "blast fence" to protect the plaintiffs' property from the blasts coming from the jet aircraft, should have provided places for the warm-up and take-off of such aircraft at a greater distance from the plaintiffs' property, etc. We need not set forth here the allegations concerning the liability only of the said city, because, as we view the posture of the present appeal, we are not called upon to rule as to the sufficiency of the allegations in the amended complaint concerning the city.
Turning now exclusively to the crucial question of the sufficiency of the allegations in the initial complaint against the four defendant airlines, we find ourselves in the middle of one of the most controversial *201 and rapidly-developing fields of law in the present day  the application of the old common-law rules to the rights of property owners with respect to the problems created in this "jet age" by new and faster vehicles of public transportation. Some authorities can be found to support almost any position in this disputed area. Among the most useful surveys of this field of law are Charles S. Rhyne's "Airports and the Courts" (see especially his analysis of the five theories of air space rights, pages 154 to 162); Roderick B. Anderson's article on "Some Aspects of Airspace Trespass" in Northwestern University's "The Journal of Air Law and Commerce," Autumn, 1960, pages 341 to 359; and the note on "Air-plane Noise: Problem in Tort Law and Federalism" in the Harvard Law Review, June, 1961, pages 1581 to 1596. See also the useful annotations in 66 A.L.R.2d 634, 74 A.L.R.2d 615, and 77 A.L.R.2d 628.
Our problem in analyzing the allegations of the complaint is somewhat compounded by the fact that the plaintiffs in their allegations have, in a sense, "thrown the book" at the airlines, using "words of art" characteristic of several separate and distinct causes of action, including negligence, trespass, nuisance, and eminent domain (or "inverse condemnation.") Nevertheless, looking into what we conceive to be the heart of their allegations against the airlines, we are of the opinion that the essence of their complaint is a purported cause of action for private nuisance. The plaintiffs-appellants in their briefs filed in this appeal indicate that they consider such to be their concept of their cause of action. We, therefore, will here treat the allegations in the plaintiffs' complaint as endeavoring to state a cause of action for a private nuisance against the airlines.
Upon that premise, we examine the allegations of the complaint in the light of the rules that have been established by the courts as applicable to actions for private nuisance.
The general rule in most jurisdictions seems to be that in an action for nuisance the invasion complained of must be unreasonable, unwarrantable, or unlawful. We think that this rule is applicable to such actions in Florida, as indicated in innumerable decisions of our appellate courts. One of such decisions is Cason v. Florida Power Co., 74 Fla. 1, 76 So. 535, L.R.A. 1918A, 1034 (1917), in which the Supreme Court of Florida said:
"All property is owned and used subject to the laws of the land. Under our system of government property may be used as its owner desires within the limitations imposed by law for the protection of the public and private rights of others. Those who own real estate may use it as desired so long as the rights of others are not thereby invaded. And there is no such invasion when the use is authorized by law and is reasonable with reference to the rights of others. Legality and reasonableness in the use of property, as such use affects the public and private rights of others, mark the limitations of the owner's rights. The reasonableness of the use of property by its owner must of necessity be determined from the facts and circumstances of particular cases as they arise, by the application of appropriate provisions or principles of law and the dictates of mutual or reciprocal justice."
The statement of the rule, however, which we have found most helpful in considering the question before us of a landowner's rights in the jet age, is found in the opinion of the Supreme Court of Florida in Beckman v. Marshall, 85 So.2d 552 (1956). In that case our Supreme Court expressly adopted and approved the following language from the opinion of the Ohio Court of Appeals in Antonik v. Chamberlain, 81 Ohio App. 465, 78 N.E.2d 752 (1947):
"* * * The law of private nuisance is a law of degree; it generally turns *202 on the factual question whether the use to which the property is put is a reasonable use under the circumstances, and whether there is `an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort, and not merely a tendency to injure. It must be real and not fanciful or imaginary, or such as results merely in a trifling annoyance, inconvenience, or discomfort.' * * *
"`It is not everything in the nature of a nuisance which is prohibited. There are many acts which the owner of land may lawfully do, although it brings annoyance, discomfort, or injury to his neighbor, which are damnum absque injuria. * * *
"`The test of the permissible use of one's own land is not whether the use or the act causes injury to his neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance, but the inquiry is, Was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property? having regard to all interests affected, his own and those of his neighbors, and having in view, also, public policy.' * * *
"All systems of jurisprudence recognize the requirement of compromises in the social state. Members of society must submit to annoyances consequent upon the reasonable use of property. `Sic utere tuo ut alienum non laedas' is an old maxim which has a broad application. If such rule were held to mean that one must never use his own property in such a way as to do any injury to his neighbor or his property, it could not be enforced in civilized society. People who live in organized communities must of necessity suffer some damage, inconvenience and annoyance from their neighbors. For these annoyances, inconveniences and damages, they are generally compensated by the advantages incident to living in a civilized state."
It is interesting and significant to note that in Antonik v. Chamberlain, supra, the Ohio Court of Appeals was considering a suit for injunction filed by the owners of and residents in property in the vicinity of a proposed airport, to restrain the defendants from constructing and operating an airport. The basis of the plaintiffs' claim was that the operation of the airport would create a nuisance as to them and would further result in repeated trespasses upon their property by airplanes using the air-port, causing irreparable injury to the plaintiffs. They contended that such injury would result from noise, dust, attraction of crowds, annoyance in the peaceful enjoyment of their homes, fright and fear of physical harm from low flying and the crashing of planes, and depreciation of property values. In that case, of course, the prospective users of the airport were not parties. Nevertheless, the philosophy and rationale of the Ohio court, as reflected in the above-quoted language approved by our Supreme Court, are of peculiar pertinence in our present consideration.
We think that the above-quoted language used by the Ohio court and adopted by our Supreme Court admirably provides the legal setting for the perspective from which the legal points involved in the present appeal should be considered and adjudicated. This language seems peculiarly appropriate to the situation before us, justifying the following conclusions: that people who establish a business on property adjoining an airport do so with the knowledge that changes and improvements are being, and will long continue to be, made in aircraft using the airport, requiring different flight patterns and different procedures in warm-up, take-off, and landing in the interest of the safety of the human lives aboard the planes; that the national and international airlines serving the airport must, in this highly competitive field, utilize the latest advancements in air transport, *203 including jet aircraft, in order to stay in business and continue to serve the public in the community and throughout the nation. The adjoining landowners, then, may have to make some "compromises" and to be "generally compensated by the advantages incident to living in a civilized state." This does not necessarily mean, of course, that such adjoining landowners may not have a cause of action against the operator of the airport on account of the latter's failure to acquire sufficient land for the purposes of the airport or for its failure to erect a blast fence or other devices to protect adjoining landowners from the effects of the use of jet aircraft, but such a question is not before us in this appeal.
Furthermore, we wish to stress the fact that we are not here holding that the plaintiffs are estopped to file an action against the airlines on account of having elected to establish their "Airport Inn" on land adjoining the airport, knowing that they would be subjected to some forms of annoyance. This doctrine was recognized by this court in Lee v. Florida Public Utilities Co., Fla., 145 So.2d 299 (1962), wherein we said:
"It appears to be well settled that if one voluntarily elects to live in an industrial area, he cannot complain of noise, noxious odors or any other unpleasant factors that may arise from the normal operation of businesses in the area merely because they may interfere with his personal satisfaction or aesthetic enjoyment. It is said that no one can move into an area given over to foundries and boiler shops and demand the quiet of a farm."
Incidentally, in our opinion in the just-quoted case we cited and relied upon the rule of reasonableness recognized in the Beckmen and the Cason cases, supra.
We cannot here rule upon the foregoing question regarding the plaintiffs' estoppel vel non because the predicate for applying such a doctrine does not appear in the allegations of the initial or amended complaint, other than the fair inference that the plaintiffs' "Airport Inn" was in operation in 1962 when the airlines converted to jet aircraft. Presumably, the facts concerning the dates when the plaintiffs bought their property and built their restaurant would have appeared in subsequent proceedings in the Circuit Court. The rule is fundamental, of course, that in considering a motion to dismiss a complaint for failure to state a cause of action, the trial or appellate court is confined to the allegations within the four corners of the complaint.
The failure of the plaintiffs to include in their complaint sufficient allegations that the complained-of-acts of the defendant airlines were unreasonable, unwarrantable, or unlawful is, we think, the basic deficiency of their complaint.
In reaching this conclusion that the complaint does not sufficiently allege that the airlines' acts were unreasonable, unwarrantable, or unlawful, we must and do take into consideration the nature of the airlines' business  the interstate transportation of passengers by aircraft, and the fact that the operations of their aircraft are constantly subject to the control and supervision of local, state, and federal governmental agencies. In the consideration of this and the other subjects involved in this appeal, we have been greatly aided by the excellent and scholarly briefs filed herein by both sides to this appeal.
The most vivid description we have read of the complexity of controls to which the aircraft of commercial airlines are subject, is found in the concurring opinion of Mr. Justice Jackson in a tax case before the United States Supreme Court, Northwest Airlines v. Minnesota, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944), as follows:
"The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls. It takes off only by instruction from the *204 control tower, it travels on prescribed beams, it may be diverted from its intended landing, and it obeys signals and orders. * * *"
While Congress has recognized the national responsibility for regulating interstate air commerce and federal control is intensive, aircraft operating at municipally-owned airports in Florida are also subject to municipal control. This was recognized by the Supreme Court of Florida in Brooks v. Patterson, 159 Fla. 263, 31 So.2d 472 (1947), in which that court held that the City of St. Petersburg was under an affirmative duty, in operating its public airport, to adopt and enforce rules and regulations governing users of the airport in such a manner that interference with neighboring property would be reasonably eliminated.
This factor of the control of the airlines' operations at the airport by federal and municipal authorities, is vital in considering the airlines' liability for nuisance as a result of such operations. Unquestionably, it was the defendant airlines' duty to obey the rules and regulations imposed on them by the City of Jacksonville in the discharge of its obligations under the decision in Brooks v. Patterson, supra. There is no allegation in the complaint before us that the defendant airlines have any proprietary interest in or control of the airport in question. They were, therefore, obligated to warm up, take off, and land their jet aircraft at the places designated by, and in the manner required by, the governmental authorities. Nowhere in their complaint do the plaintiffs allege that the defendant airlines' acts complained of as constituting a nuisance were in violation of the laws, rules, and regulations of the governmental authorities, but, on the contrary we think it is a fair inference from their allegations that the said acts were in conformity to such laws, rules, and regulations; nor do the plaintiffs allege that the procedures followed by the airlines were not reasonably necessary for the safety of the passengers travelling in their jet aircraft.
Upon the foregoing reasoning we conclude that in the case on appeal the court properly held that the initial complaint and the proposed amended complaint fail to state a cause of action against the defendant airlines in nuisance or any other cognizable cause of action. In reaching this conclusion we emphasize again that we are not here passing upon the question whether the proposed amended complaint states a cause of action against the City of Jacksonville. As we view the posture of this appeal, we consider that such a question is not before us for adjudication.
Nevertheless, we deem it appropriate to discuss the allegations of the plaintiffs' proposed amended complaint that appear to charge that both the city and the airlines are responsible for the "taking" of an air easement by overhead jet flights, evidently relying on the theory of "inverse condemnation." The invalidity of this claim against the airlines is, we think, settled by the recent decision of the Supreme Court of the United States in Griggs v. Alleghany County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). In that case the Supreme Court held that the county, which was the promoter, owner, and lessor of an airport, was the party responsible for compensating an adjoining landowner for the taking of an air easement by the detrimental effects of overhead jet flights. The court stated that the county, in designing the airport, "had to acquire some private property. Our conclusion is that by constitutional standards it did not acquire enough." The court further said:
"It is argued that though there was a `taking,' someone other than respondent was the taker  the airlines or the C.A.A. acting as an authorized representative of the United States. We think, however, that respondent, which was the promoter, owner, and lessor of the airport, was in these circumstances the one who took the air easement *205 in the constitutional sense. Respondent decided, subject to the approval of the C.A.A., where the airport would be built, what runways it would need, their direction and length, and what land and navigation easements would be needed."
We hold, therefore, that the Circuit Court in the final order appealed from correctly dismissed the initial and the amended complaints for failure to state a cause of action against the airlines.
We now turn to the second question presented for determination in this appeal  whether the Circuit Court erred in the said final order in denying the plaintiffs' motion for leave to file the amended complaint joining as an additional party defendant the City of Jacksonville. The court's reasons for so ruling are set forth in the said order, which we quoted near the beginning of this opinion.
It will also be remembered that in the order entered by the Circuit Court on November 21, 1962, in Case No. 62-1103-L granting the airlines' motions to dismiss the amended complaint, the court stated that its ruling was "* * * without prejudice to the filing by any plaintiff of another suit against either or all of those defendants based upon some concept other than the theory of the taking of property without payment of compensation therefor * * *."
When the plaintiffs on May 3, 1963, filed the present action (Case No. 63-822-L) against the airlines, we do not think that they thereby violated the terms of the order of November 21, 1962. While their complaint, as we mentioned above, alleges a taking as well as negligence, trespass, and nuisance, we have held above that their complaint essentially sounds in nuisance, so we think that the plaintiffs committed no impropriety in filing the instant action, though, as we have held, the complaint fails to state a cause of action in nuisance against the airlines.
The guidelines governing a trial court in ruling upon a party's motion for leave to file an amended pleading in a case are to be found in Rule 1.15 of the Florida Rules of Civil Procedure. Paragraph (a) of that Rule provides in pertinent part:
"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. * *"
Paragraph (e) of Rule 1.15 also provides in part:
"The court may at any time, in furtherance of justice, upon such terms as may be just, permit any process, proceeding, pleading or record to be amended, or material supplemental matter to be set forth in an amended or supplemental pleading. * * *"
Thus, the single standard laid down in the just-quoted rule for measuring the ruling of a court in allowing amendments to pleadings is the standard of justice, as referred to in the phrases "when justice so requires," "in furtherance of justice," and "upon such terms as may be just."
Since the only standard named in the said rule to guide trial courts in allowing amendments is the basic but abstract concept of "justice," we think that the rule must be construed as endowing such courts with a very broad although not an unlimited, discretion.
Examining the setting in which the Circuit Court made its ruling denying the plaintiffs' motion for leave to file their amended complaint, we find as mentioned earlier in this opinion, that the said court *206 in the first action (Case No. 62-1103-L) had dismissed the complaint therein as to the airlines but sustained it as to the City of Jacksonville, yet shortly before the trial the plaintiffs dismissed the cause by stipulation. An equity suit (63-822-E) was also pending in the said court against the city.
In view of the particular circumstances of this case as shown by the record on appeal, we cannot say that the Circuit Court abused its broad discretion in denying the plaintiffs' said motion for leave to file the amended complaint, nor that the said ruling fell short of the standard of justice prescribed in Rule 1.15.
Accordingly, the final order appealed from herein should be, and it is
Affirmed.
STURGIS, C.J., and WIGGINTON, J., concur.