85 So.2d 552 (1956)
John C. BECKMAN and Katherine B. Beckman, his wife, and Richard C. Beckman and Patricia Beckman, his wife, Appellants,
v.
Francis J. MARSHALL and Ann M. Marshall, his wife, Appellees.
Supreme Court of Florida. Special Division A.
February 15, 1956.
*553 Alfred E. Hawkins, Hawkins & Orfinger, and Horn & Ossinsky, Daytona Beach, for appellants.
Walter A. Shelley, Daytona Beach, for appellees.
DICKINSON, Associate Justice, and DREW, Chief Justice.
This is a squabble between two neighbors.
Plaintiffs below, operators of a guest house on Ridgewood Avenue in Daytona Beach (four-laned U.S. Highway No. 1) brought this action against the four defendants alleging that they were maintaining a private nuisance on their property in that they were conducting a day nursery thereon five days a week for children from two to six years of age from about 8:00 a.m. to about 5:00 p.m. Voluminous testimony (some 800 pages) was taken by all the parties below and the chancellor, in a very sweeping decree, enjoined the defendants from operating their nursery entirely, and then further enjoined them from doing certain specific acts in relation thereto, and awarded damages and costs against defendants. An appeal has been taken to this Court from this decree and plaintiffs' cross-appeal on the denial of damages for loss of value in plaintiffs' property.
*554 From the voluminous testimony taken we glean that plaintiffs bought this property in 1940 and have operated it as a guest house ever since. It is located on U.S. Highway No. 1 just one-half a block south of its intersection with U.S. Highway No. 92. U.S. Highway No. 1 is a four-lane highway between Jacksonville and Miami. U.S. Highway No. 92 is the Federal highway between Daytona Beach and DeLand. In the block here involved, in addition to the nursery school complained of, are three filling stations, a thirty-room hotel, a doctor's office, an insurance and real estate agency, several guest houses, of which plaintiffs' is one, and only one private home. No one other than the plaintiff is complaining. As a matter of fact, the owner of the guest house on the other side of defendants' nursery testified that she was not annoyed by it. Plaintiffs are elderly people. The Florida East Coast Railway station and main line tracks are immediately to the rear of the properties involved, less than one block away. There is no zoning ordinance prohibiting the use of such property for such purposes. Hence the matter boils down to whether this is a private nuisance or not.
From the testimony it appears that these children begin to arrive about 8:00 a.m. and leave about 5:00 p.m., taking a nap after being fed their lunch. The school here is well supervised by the defendant and an assistant, that is as well supervised as an institution of this kind can be. The playing of the children outside is limited and supervised. Their actions and singing inside is supervised and everything that can be done is being done to minimize the noise. Since this is an unrestricted area so far as zoning against schools is concerned, the school would have to qualify as a private nuisance for equity to intervene. True, the children make a certain amount of noise, but there must be some relationship of their noise to the surrounding noises for equity to act. It is inconceivable to see how, in the neighborhood of this four-lane highway with its trucking traffic, the railroad immediately to the rear, three filling stations, traffic signal lights on the corner, the pitter patter of little feet and the noises of children singing and at play, even though there may be twenty-five of them, can become a nuisance to plaintiffs and be enjoinable in a court of equity.
The following language from the case of Antonik v. Chamberlain, 81 Ohio App. 465, 78 N.E.2d 752, 758, which we hereby adopt and approve, is particularly applicable and we think largely determinative of the questions involved in this case:
"Nuisance, in law, for the most part consists in so using one's property as to injure the land or some incorporeal right of one's neighbor. An act which is wrongful in itself may be adjudged wrongful before it is committed, as well as afterwards. But an act which is in itself rightful, and may become wrongful only because of some effect which it produces, is generally not proved wrongful by a priori reasoning. Even when it appears that a given act or acts done in a certain way are wrongful, it does not follow that some part of the act or acts may not be rightfully done, or even that the entire operation may not be later done in such a way as to be rightful. It is often found that the damage to the defendant which the interference of a court, through injunction, would cause, will be out of all proportion to the damage to the plaintiff or to the public in general.
"The law of nuisance plys between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor. For generations, courts, in their tasks of judging, have ruled on these extremes according to the wisdom of the day, and many have recognized that the contemporary view of public policy shifts from generation to generation.
* * * * * *

*555 "The necessities of a social state, especially in a great industrial community, compel the rule that no one has absolute freedom in the use of his property, because he must be restrained in his use by the existence of equal rights in his neighbor to the use of his property. This rule has sometimes been erroneously interpreted as a prohibition of all use of one's property which annoys or disturbs his neighbor in the enjoyment of his property. The question for decision is not simply whether the neighbor is annoyed or disturbed, but is whether there is an injury to a legal right of the neighbor. The law of private nuisance is a law of degree; it generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances, and whether there is `an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort, and not merely a tendency to injure. It must be real and not fanciful or imaginary, or such as results merely in a trifling annoyance, inconvenience, or discomfort.' * * *
"`It is not everything in the nature of a nuisance which is prohibited. There are many acts which the owner of land may lawfully do, although it brings annoyance, discomfort, or injury to his neighbor, which are damnum absque injuria * * *.
"`The test of the permissible use of one's own land is not whether the use or the act causes injury to his neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance, but the inquiry is, Was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property? having regard to all interests affected, his own and those of his neighbors, and having in view, also, public policy.' * * *
"All systems of jurisprudence recognize the requirement of compromises in the social state. Members of society must submit to annoyances consequent upon the reasonable use of property. `Sic Utere tuo ut alienum non laedas' is an old maxim which has a broad application. If such rule were held to mean that one must never use his own property in such a way as to do any injury to his neighbor or his property, it could not be enforced in civilized society. People who live in organized communities must of necessity suffer some damage, inconvenience and annoyance from their neighbors. For these annoyances, inconveniences and damages, they are generally compensated by the advantages incident to living in a civilized state."
We are not unmindful of the fact that this record does show the operation of the nursery to be offensive and annoying to the appellees. This, however, is not the test. Obviously the appellees, so to speak, are simply allergic to children and the noises they make. In dealing with the question of what constitutes a nuisance, the characteristics and temperament of the affected person or persons must be taken into consideration. The test to be applied is the effect of the condition complained of on ordinary persons with a reasonable disposition in ordinary health and possessing the average and normal sensibilities. It is a well-settled principle of law that:
"The test is not what the effect of the matters complained of would be on persons of delicate or dainty habits of living, or of fanciful or fastidious tastes; or on persons who are delicate, or invalids, afflicted with disease, bodily ills, or abnormal physical conditions; or on persons who are of nervous temperament, or peculiarly sensitive to annoyance or disturbance of the character complained of; or on persons who use their land for purposes which require exceptional freedom from deleterious influences." 66 C.J.S., Nuisances, § 18(c), p. 765.
Moreover, the time that the noises or other offensive actions took place is important. In the instant case, all such events took *556 place between 8:00 o'clock in the morning and 5:00 o'clock in the afternoon. What well might be a private nuisance at 3:00 o'clock in the morning would not be one in the day time or earlier in the evening. See Mayflower Holding Company v. Warrick, 143 Fla. 125, 196 So. 428; 66 C.J.S., Nuisances, § 22(b), p. 775; Bartlett v. Moats, 120 Fla. 61, 162 So. 477.
Measured by the above standards, the decree appealed from is erroneous and is hereby reversed with instructions to dismiss the cause at the cost of the plaintiffs below.
TERRELL and THORNAL, JJ., concur.