576 So.2d 921 (1991)
Robert A. BECHHOLD and Marianne T. Bechhold, Appellants,
v.
MARINER PROPERTIES, INC., Appellee.
No. 90-02370.
District Court of Appeal of Florida, Second District.
March 27, 1991.
*922 Robert P. Henderson of Simpson, Henderson & Savage, Fort Myers, for appellants.
J. Jeffrey Rice of Goldberg, Goldstein & Buckley, P.A., Fort Myers, for appellee.
ALTENBERND, Judge.
Robert and Marianne Bechhold appeal a final summary judgment in favor of Mariner Properties, Inc., in their action to abate an alleged private nuisance. Because the record before the trial court was not adequate to permit a summary judgment, we reverse.
Mr. and Mrs. Bechhold purchased a home on Sanibel Island, Florida, in 1983. Their home is adjacent to the Dunes Country Club, which is owned and operated by Mariner Properties. At the time that the Bechholds' purchased their home, their backyard was very close to the third tee on the golf course and golfballs rarely fell in their backyard. In his affidavit, Mr. Bechhold estimated that twelve golfballs per year entered the yard between 1983 and 1988.
In 1988, Mariner Properties decided to reconfigure this golf course. Apparently no contractual agreement existed between the Bechholds and Mariner Properties to prevent this reconfiguration. As a result of the reconfiguration, the Bechholds' backyard is now approximately 170 yards from the blue, professional tee. When it redesigned the golf course, Mariner Properties was aware that the fairway behind the Bechholds' house would be "tight." From the tee, there is a row of houses on the left, including the Bechholds' house. On the right, there is a lake which bounds the entire fairway. The hole is a par five and 462 yards from the blue tee. A direct shot down the fairway passes over the edge of the lake, approximately 120 yards from the blue tee. The fairway is about 50 yards wide in the vicinity of the Bechholds' home. A ball which drifts a few degrees to the left on a shot from the tee ends up in the Bechholds' backyard.
Mr. Bechhold estimates that since the golf course reopened, approximately one thousand balls have been entering his backyard per year. His affidavit contains photographs showing numerous dents in his screen enclosure from errant golfballs. He has reinforced the screen enclosure with hardware cloth, a heavyduty wire mesh. The balls hit the hardware cloth with sufficient force that some have become embedded in the wire of the hardware cloth. Three windows have been broken by balls, and Mr. Bechhold has replaced standard glass with bulletproof glass. He and his wife are afraid to use parts of their yard for fear of being hit by a ball. Balls have damaged their roof and their solar heating system. They cannot leave their car parked in their driveway. They submitted affidavits to the trial court establishing that some of their neighbors have experienced similar problems.
During the design phase of the reconfiguration, the golf course architects retained by Mariner Properties considered reversing the direction of play in this area. They rejected this concept because most golfers are right-handed and are prone to slicing the ball. A slice curves to the right. Thus, if the course had been designed in the opposite direction, they believed that the Bechholds' problems would be worse.
*923 The architects designed bunkers and mounds on the third hole to minimize the number of balls that would roll into the vicinity of the homes. They also posted a sign that requested golfers to use "extreme caution" to avoid hitting balls into the residential area. Additional trees or shrubbery were planted in the area. These design features have not prevented the thousand golfballs hit into the Bechholds' backyard annually.
Mariner Properties filed a motion for summary judgment that was supported exclusively by two affidavits  one from a representative of Mariner Properties and the other from a representative of the architects. The affidavits explain the changes and opine that reasonable care was used in redesigning the course.
The Bechholds did not file an affidavit from an expert, but did file their own affidavits and those of neighbors to explain the extent of their problems. Although they filed no expert affidavit, the affidavits filed by Mariner Properties provide a logical explanation for the problem. If a right-handed golfer aims for the center of the fairway on this hole and slices, his or her ball will end up in the lake. To avoid losing balls, right-handed golfers who frequently slice aim for a location which is very close to the Bechholds' property line. Other golfers who hook their golfballs also hit into the Bechholds' yard.
The Bechholds' complaint alleges negligence and private nuisance. In Florida, private nuisance is subject to an objective standard which is somewhat comparable to the objective standard used in negligence: "The test to be applied is the effect of the condition complained of on ordinary persons with a reasonable disposition in ordinary health and possessing the average and normal sensibilities." Beckman v. Marshall, 85 So.2d 552, 555 (Fla. 1956).
The law of private nuisance is a law of degree; it generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances, and whether there is "an appreciable, substantial tangible injury resulting in actual, material, physical discomfort, and not merely a tendency to injure."
Beckman, 85 So.2d at 555 (quoting Antonik v. Chamberlain, 81 Ohio App. 465, 78 N.E.2d 752, 758 (Ohio Ct. App. 1947)).
The burden on a movant who seeks a summary judgment in a negligence or private nuisance action on a factual question of reasonableness is very high. See Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977). In this case that burden has not been established. In reversing this summary judgment, however, we emphasize that we are not ruling that these conditions constitute a private nuisance, and we are not specifying any particular relief in the event that the trial court ultimately finds a nuisance. Living on a golf course and living with golf balls necessarily go hand-in-hand. The issues here are whether the Bechholds are being subjected to more than a reasonable exposure to golfballs and what steps, if any, would be appropriate to remedy this problem.
Reversed.
CAMPBELL, A.C.J., and DANAHY, J., concur.