OPINION
Appellant-appellant Charles Coy appeals from a judgment of the trial court affirming an order of the Montgomery County Board of Health declaring his property to constitute a nuisance, and ordering it abated. Coy contends that the judgment of the trial court is not sustained by the weight of the evidence, and that the trial court erred by failing to take additional evidence pursuant to R.C. 2506.03. We conclude that Coy has waived any claim that the trial court should have taken additional evidence. Based upon our review of the evidence in the record of the administrative proceedings, we are not prepared to find, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence. Accordingly, the judgment of the trial court is Affirmed.
 I
In December, 1998, appellee-appellee the Montgomery County Board of Health declared Coy's property located at 9435 North Dixie Drive, Riverside, Ohio to be a public nuisance. The Board of Health further ordered that the public nuisance be removed or abated on or before a date certain. On February 3, 1999, Coy was afforded the opportunity to be heard by the Board of Health. He was represented by counsel. Witnesses were sworn, testimony was taken, and Coy's attorney had the opportunity to cross-examine the witnesses. Coy had, but did not take, the opportunity to present evidence to the Board of Health.
Following the hearing, the Board of Health determined that Coy's premises constituted a public nuisance, and notified Coy that the Board of Health would, itself cause the nuisance to be abated, and thereafter certify the cost and expense to the Montgomery County Auditor, to become a lien against the property. From this order, Coy appealed to the Montgomery County Common Pleas Court.
The parties briefed the issues in the trial court, which entered judgment affirming the order of the Board of Health. From the judgment of the trial court, Coy appeals.
 II
Coy's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FINDING THAT APPELLANT MAINTAINED A PUBLIC NUISANCE ON HIS PREMISES AT 9435 N. DIXIE DRIVE, MONTGOMERY COUNTY, OHIO; AND THE JUDGMENT IS NOT SUSTAINED BY THE WEIGHT OF THE EVIDENCE.
Essentially, Coy contends that the judgment of the trial court affirming the decision of the Board of Health is against the manifest weight of the evidence. In connection with this assignment of error, Coy argues that "an aesthetic eyesore" may not be deemed to constitute a public nuisance unless it is visible from public roadways or surrounding countryside, and there is no evidence in the record to support a finding that the unsightly condition of Coy's property is visible from public roadways or the surrounding countryside.
We find it unnecessary to decide this issue, because there is evidence in the record to support a finding, and the trial court did find, that the condition of Coy's property endangered public health and safety.
Twelve photographs of Coy's property were identified by Inspector Mark DeWald, and marked as an exhibit. Although there was never a formal motion to admit the photographs in evidence, the record reflects that the Board of Health did examine the photographs, and they are in the record of the administrative hearing.
DeWald testified as follows:
 This is the property with several — a lot of debris seen around the back and cars and junk and tires and stuff in weeds in the lot behind it. Since, I was up there last time since those pictures were taken there has been no change in the condition of the property. I recommend that the Board that the property condemned as a public nuisance and abate the nuisance by cleaning up the lot and also tearing down the metal structure.
Later, on cross-examination, DeWald testified as follows:
 As far as the cars they provide harborage for rats and things of that nature — harborage for other animals. I mean there is oil and things that could be in those cars that could be going to the ground.
* * *
 Sir, there is also many stacks of tires back there, which are hazardous waste that just stacking up there for mosquito habitants from when the rain water collects. As far as people entering the property, there is so many debris and things like that running around and things like that, that anybody that goes back there could get hurt things of that nature. As far as the steel structure that's back there. I don't know how sturdy that is as far as that standing up by itself. I don't know if it can fall or what not.
On cross-examination, DeWald acknowledged that he had not seen any rats running around the premises.
Housing supervisor Pat MacKenzie testified as follows:
 Certainly, when you have junk and debris that is an attractive nuisance to kids that is always a problem. Kids could get hurt back there. Certainly the automobiles and other things make a good harborage for rats. They love to burrow into the seats and things like that. They would make perfect burrows for them. There are a couple good health reasons for taking care of this property. * * *.
Russell Guy testified as follows:
 My name is Russell Guy and I'm the father of Dr. Guy, the owner of the [next door] property. I lived there for 10 years and the only thing I've seen is more junk come in and nothing never goes out. It's a mess.
As noted, the twelve photographs of the property that were identified, marked, and considered by the Board of Health are in our record. We have examined them, and they are consistent with the testimony quoted above.
The standard of review to be used in connection with an administrative appeal was recently discussed in Smith v. GranvilleTwp. Bd. of Trus. (1998), 81 Ohio St.3d 608, 612, 613, as follows:
 An administrative order is initially appealed to the court of common pleas. In Dudukovich v. Lorain Metro. Hous. Auth. (1979), 58 Ohio St.2d 202, 206, 207, 12 O.O. 3d 198, 201, 202, 389 N.E.2d 1013, 116-117, this court discussed the standard of review which the common pleas court should employ in reviewing an agency's order stating that the common pleas court must weigh the evidence in the record and may consider new or additional evidence.
 The court of common pleas' decision may then be appealed to an appellate court "on questions of law as provided in the Rules of Appellate Procedure." (Emphasis supplied by the Supreme Court.) Under R.C. 2506.04, however, the scope of the appellate review is much more limited (See Irvine v. Employment Comp. Bd. of Review
[1985], 19 Ohio St.3d 15, 18, 19 OBR 12, 15, 482 N.E.2d 587, 590) and was defined in Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 30, 465 N.E.2d 848, 852, as follows:
 "An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires the court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."
Logically, an appellate court ought to have greater scope to reverse a judgment of a trial court that, itself, has reversed a decision of an administrative agency. However, where, as here, the trial court, having extended its own, more limited, deference to the administrative proceedings, has affirmed the decision resulting from those proceedings, great deference is to be accorded to the trial court, on appeal, with respect to factual issues.
Although the evidence in the transcript of the administrator proceedings is cursory, we conclude that it is sufficient, in view of the great deference to be accorded to the judgment of the trial court, to support a finding that the condition of Coy's property constitutes a danger to the public health and safety.
Coy argues that, before a public nuisance may be found, "there must be a showing that something has to emanate or arise from [the] property that actually causes, directly and proximately, injury to the general public, . . . ." Coy citesAntonik v. Chamberlain (1947), 81 Ohio App. 465, and Routsaw v.Clark (1985), 22 Ohio App.3d 20, for the proposition that "to constitute a public nuisance it must be shown that the public suffered tangible injury resulting in actual material and physical discomfort."
We disagree. Antonik, supra, did not involve an administrative appeal, but involved an attempt to enjoin the building of an airport. The court balanced the interests of the parties, and concluded that the plaintiffs had not demonstrated that they would suffer irreparable injury, and that they had not shown by the required degree of proof the substantial damage and injury necessary for injunctive relief. Likewise, Routsaw, supra,
did not involve an administrative appeal, but involved a suit for damages by one neighbor against another, based upon the growth of certain trees onto her property. No issue involving the public health and safety was involved.
The case before us involves a determination by an administrative agency, the Montgomery County Board of Health, that public health and safety interests affected by the condition of Coy's property outweigh his private ownership interest, unlike theAntonik and Routsaw cases, which involved the adjudication of competing private interests. The Board of Health has presumably acquired some expertise in the evaluation of the impact of conditions upon the public health and safety, which is entitled to some deference.
R.C. 3707.01 empowers a board of health to "abate and remove all nuisances within its jurisdiction." The statute does not provide a definition of "nuisance," but the term is not unknown to the common law. In Crown Property Dev. Inc. v. Omega Oil Co.
(1996), 113 Ohio App.3d 647, at 658, another case cited by Coy, the court cited, with approval, one of several definitions of nuisance found in State, ex rel. Chalfin v. Glick (1960), 113 Ohio App. 23, at 26-27:
 "A public nuisance has been defined as the doing of or the failure to do something that injurious affects the safety, health, ormorals of the public, or works some substantial annoyance, inconvenience, or injury to the public. . ."
39 American Jurisprudence, 285 Nuisances, Section 8.
In State, ex rel. The Ohio Hair Products Co. v. Rendigs
(1918), 98 Ohio St. 251, at 259, the Ohio Supreme Court opined as follows:
 A municipality under the provisions of this section [General Code Section 3650] is authorized to regulate and suppress all places that in its judgment are likely to be injurious to the health of its inhabitants or to disturb the people living in the immediate neighborhood by offensive odors.
We are not prepared to hold that a county board of health must wait until a public health hazard has actually caused harm to one or more individuals before it may act to abate the nuisance. Indeed, there is authority to the contrary cited in one of the cases upon which Coy relies:
 "There must be both injury and damage in order to justify an injunction; but a person confronted with a nuisance and threatened with the destruction of his property does not have to await the actual infliction of damage to his property, but has the right, when the potential danger arises, to appeal to a court of equity for relief, if such appeal is seasonably made." 66 Corpus Juris Secundum, 870, 872, Nuisances, Section 111A.
State, ex rel. Chalfin v. Glick, supra, at 27, cited in CrownProperty Dev. Inc., supra, at 658. (Emphasis added.)
In our view, as long as there is evidence in the record of the administrative proceedings that would justify a judgment by the board of health that conditions upon a premises "are likely to be injurious to the health of [the] inhabitants [of the county]," the county board of health may declare the conditions of the premises to constitute a public nuisance, and may order the abatement of that nuisance. See, State, ex rel. The Ohio Hair Products Co. v.Rendigs, supra, at 259. The requisite likelihood that the condition of the premises will be injurious to the health of the inhabitants of the county must be more than fanciful, but need not be certain, or even overwhelmingly probable. Indeed, in balancing the interests of the property owner as against public health interests, the severity of the injuries, and the extent of the population that will be exposed to the risks of injuries, is of significance.
In the case before us, the testimony in the record concerning the attractive nuisance to children posed by the derelict cars and other objects strewn about the property, the testimony concerning the likely harborage of rats and other vermin, and the testimony concerning the likelihood that the stacked tires would constitute a habitat for mosquitoes, when reviewed with the requisite, substantial deference to the findings of the administrative agency and the trial court, support a conclusion that the condition of the property is likely to be injurious to the health of the residents of Montgomery County. Accordingly, Coy's First Assignment of Error is overruled.
 III
Coy's Second Assignment of Error is as follows:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO TRY THIS CASE DE NOVO AS MANDATED BY SECTION 2506.03(A)(5) OHIO REVISED CODE, THEREBY DENYING APPELLANT HIS DAY IN COURT.
Coy's reply brief in the trial court contained the following as its second paragraph:
 The only issue is whether a public nuisance was maintained on Appellant's property. As pointed out in Appellant's brief, the Appellee stated, through Mr. Dahms, "It's whether or not it's a public health nuisance." Therefore, there are no issues about procedurally confining ourselves to the record. The Supreme Court cases cited by Appellee relating to this issue of the decision on appeal must be confined to the record, is valid established law. However, there is no claim by either of these litigants that evidence dehors the record has been offered. Likewise, there has been no evidence or issue raised by either party regarding the manner in which this honorable Court [the Montgomery County Common Pleas Court] is handling this appeal.
In view of above-quoted paragraph from Coy's reply brief in the trial court, he has waived any possible objection to the trial court's failure to have afforded either party the opportunity to introduce additional evidence in the trial court.
Coy's Second Assignment of Error is overruled.
 IV
Both of Coy's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.