CASANUEVA, Judge.
Gulf Bay Land Investments, Inc. and Parcel J-I Development, Inc., defendants in the trial court, appeal an adverse judgment for permanent injunction precluding them from completing a residential eondo-minium project in Collier County. We find sufficient evidence in the record to support the trial court’s factual findings and no abuse of discretion in entering the permanent injunction. Therefore, we affirm the judgment for permanent injunction, which renders it unnecessary for us to address the issues on cross-appeal.
Defendants purchased a parcel of land in the Pelican Bay Planned Unit Development in Collier County from the original owner and developer, Westinghouse Communities of Naples, Inc. (WCN), intending to develop it as Waterpark Place. They originally planned to build four similar high-rise luxury residential condominiums; two of the four buildings, the St. Pierre and the St. Laurent, were constructed. Janice M. Trecker and the other appellees (Plaintiffs) are residents or owners of condominium units in these two buildings. After the St. Pierre and the St. Laurent were completed, and sensing a change in the preferences of luxury condominium buyers for larger units with higher ceilings, Defendants scrapped their plans for the remaining two buildings. Instead of two separate buildings, the new plan called for a “twin-tower one building complex,”[1] to be named Cap d’Antibes. To achieve their goal, they also changed Waterpark Place’s site development plan and amended the parcel’s declaration of restrictions and protective covenants.
Two years after construction on the underground and ground level work of Cap d’Antibes had begun, Plaintiffs filed suit seeking a permanent injunction barring the construction of Cap d’Antibes. Plain *1159 tiffs asserted that the proposed project violated the minimum setback and four-building requirements in the 1990 protective covenants originally filed by WCN. The 1990 restrictive covenants required that the minimum distance between two unattached structures be one-half the sum of their heights or fifty feet, whichever is greater. Cap d’Antibes and its closest neighbor in Waterpark Place, the St. Laurent, are each about two hundred feet in height.
After a lengthy trial with numerous witnesses and documentary evidence, the trial court found in Plaintiffs’ favor. The court’s final judgment contained extensive factual findings and concluded that the project did not comply with the setback requirements of the restrictive covenants, either between Cap d’Antibes and its nearest neighbor or the parcel’s boundaries, or between the two towers. The court found that the proposed change in the project combined the last two not yet constructed buildings into two very large buildings on one common base and that each building’s footprint appeared to be double the size of the building it replaced. Defendants had also claimed that the original developer, WCN or its successor, who had retained certain approval rights to any amendment to Waterpark Place’s site development plan, had waived the setback requirements in a letter dated February 21, 2000. The trial court rejected this defense and found that the letter did not specifically approve any reduction in the setbacks required by the restrictive covenant. Even more important, the court found that the letter was not issued by WCN or its successors and does not constitute written approval of any reduction in the setback requirements required by the restrictive covenant.
The issue in this case is not whether Defendants’ proposed changes adhered to the original setback requirements (they did not) but whether the setback requirements were properly waived by the successor to the original developer. Without reweighing the evidence or substituting our judgment for that of the trial court on credibility, our task is to decide whether competent, substantial evidence supports the trial court’s factual finding that the February 21, 2000, letter was not issued either by WCN or one of its successors. Next, we review the trial court’s judgment for permanent injunction under the abuse of discretion standard. See Smith v. Coalition to Reduce Class Size, 827 So.2d 959, 961 (Fla.2002) (“To the extent it rests on factual matters, an order ... lies within the sound discretion of the trial court and will be affirmed absent a showing of abuse of discretion.”). We reject Defendants’ contention that because this case deals with the interpretation of deed restrictions and a contract the standard of review is de novo.
The February 21, 2000, letter is on the letterhead of “WCI Watermark Communities Inc.”[2] It is signed by Elizabeth B. Whaley, whose title below her signature is “Administrator of Design Review.” It is addressed to Attorney Anthony P. Pires at his firm, Woodward, Pires & Lombardo, P.A., in Naples. Ms. Whaley makes two salient statements in this letter. First, she writes that pursuant to a 1998 amendment to the restrictive covenants, “WCI waived all requirements with regard to the development of this site plan and the construction of the Waterpark Towers Condominium [3] project within Waterpark Place, *1160 with the exception of an exterior lighting plan. Thus, no approval is required and the project as designed may be constructed.” Second, she continued that WCI had nevertheless reviewed the revised site plan and found that it clearly depicted all intended setbacks, including all building locations, height, and widths, and the revised plan had “WCI’s complete approval.” Based on this review, she concluded that “the project may be constructed as depicted.”
On its face this letter does not indicate that Watermark Communities Inc. is a successor to WCN. At trial, Ms. Whaley was asked about this letter and the line of corporate succession. In her testimony, which can be characterized as ambivalent, she stated that she had been with “WCI Communities” as long as it had existed and that she had been “an employee of the former company, Westinghouse, and stayed with them.” Furthermore, she described the letterhead “WCI Watermark Communities Inc.” as “our letterhead at the time.” Her testimony on cross-examination failed to clarify the succession issue:
Q: So at the time you signed this letter, you signed it on behalf of WCI Watermark Communities, Inc., and that’s who you worked for at the time; is that correct?
A: You’ll have to ask someone in legal to answer that because I’m sorry, I don’t know the trail of the name.
Q: Okay. But you worked for WCI Watermark Communities, Inc., at some point in time?
A: Yes. Well, we used that letterhead. I don’t know that was an official name or not.
As this testimony illustrates, Ms. Whaley could provide no concrete evidence of a direct corporate succession from Westinghouse Communities of Naples, Inc. to WCI Watermark Communities Inc. Ms. Wha-ley suggested to her cross-examiner that he ask someone “in legal” to answer his question.
Laurel Sitterly, the paralegal who worked for WCI Communities, Inc.’s general counsel, and who had been employed by WCI Communities since 1988, testified on direct examination that WCI was the successor corporation to Westinghouse Communities of Naples, Inc. When asked again whether “Westinghouse Communities of Naples is now known as WCI,” she replied: “Yes.”
Ms. Sitterly’s testimony adds little to Ms. Whaley’s to pinpoint a precise line of corporate succession between Westinghouse Communities of Naples, Inc. and WCI Watermark Communities Inc. Rather, the corporate succession seems to be from Westinghouse Communities of Naples, Inc. to WCI Communities, Inc., not to WCI Watermark Communities Inc. This evidence supports the trial court’s conclusion that the February 21, 2000, letter was not signed by a representative of the corporate entity with the authority to agree to the reduction in setback requirements. In reviewing this evidence, we have taken care not to substitute our view of the witnesses’ testimony for that of the trial court, which was in a better position to measure and evaluate the strength of all this testimony.
In examining this issue, we have also reviewed the many documents admitted into evidence and have discovered no evidence sufficient to contradict the trial court’s findings. In particular, Defendants’ Exhibit 9, a May 2000 document titled “Amendment to Declaration of Restrictions and Protective Covenants for a Portion of Parcel ‘B’, Future Pelican Bay Unit Fifteen, Collier County, Florida (Wa-terpark Place),” contains this statement: “WCI Communities, Inc. a Delaware corporation (hereinafter referred to as *1161 “WCI”) is the successor to Westinghouse Communities of Naples, Inc.” Above the signature of the senior vice-president of the corporation who executed this document, the name of the corporation is listed as: “WCI Communities, Inc., f/k/a WCI Communities Limited Partnership f/k/a WCN Communities, Inc., f/k/a Westinghouse Communities of Naples, Inc.” Nowhere in this line of succession appears “WCI Watermark Communities Inc.”
Also, a 1994 “Third Amendment To Declaration Of Restrictions And Protective Covenants,” Defendants’ Exhibit 6, states: “This Third Amendment is made by WCN Communities, Inc., formerly Westinghouse Communities of Naples, Inc.” This document merely supports Defendants’ Exhibit 9, and neither document shows that WCN Communities, Inc. is the same as or an antecedent corporation to WCI Watermark Communities Inc.
In light of the conflicting nature or uncertainty of the evidence on the line of succession leading up to WCI Watermark Communities Inc., the entity that allegedly approved the reduction in setbacks, we conclude the trial court did not err in holding that Defendants failed to prove that the successor to WCN waived the requirements of the covenants.[4]
Because the record supports the trial court’s factual findings that the setback requirements were not waived, we now must determine whether the trial court abused its discretion in enjoining further construction of Cap d’Antibes. “The appellate court should apply the reasonableness test to determine whether the trial judge abused his discretion, to wit, ‘discretion is abused only where no reasonable [person] would take the view adopted by the trial court.’ ” Allstate Ins. Co. v. Manasse, 707 So.2d 1110, 1111 (Fla.1998) (quoting Huff v. State, 569 So.2d 1247, 1249 (Fla.1990)); see also Krolick v. Monroe ex rel. Monroe, 909 So.2d 910 (Fla. 2d DCA 2005). Because Plaintiffs showed that the February 21, 2000, letter was neither authored by a successor corporation that had the authority to waive the setback requirements nor that the letter did, in fact, waive those requirements, we conclude that the trial court did not abuse its discretion in granting the permanent injunction.
The other contention Defendants advanced in the trial court and on appeal is that Plaintiffs waived their right to injunc-tive relief by delaying their suit for more than two years after construction of Cap d’Antibes began. The trial court ruled that there is no factual or legal basis to support the waiver and/or estoppel and/or selective enforcement defenses asserted by Defendants. Our exhaustive review of the record in this case leads us to the conclusion that the trial court did not err in this finding either.
Because the record supports the trial court’s findings and the trial court did not abuse its discretion in granting the permanent injunction, we affirm the trial court’s order in toto. The cross-appeal is dismissed as moot.
ALTENBERND and VILLANTI, JJ„ Concur.

. A disputed issue at trial was whether Cap d'Antibes is one building or two. The description we use here is one used by the vice-president of Gulf Bay Construction Co. (Defendants’ Exhibit 18) when giving notice to WCI Communities, Inc. of the proposed amendment to the community’s declaration of restrictions and protective covenants. The trial court's order does not specifically say that it found that Cap d’Antibes is two buildings, but such is a strong inference from the language the trial court used. However, whether Cap d’Antibes is one or two buildings does not affect our disposition.

. The "WCI” on the letterhead is in a much larger and bolded font type than what follows it, "Watermark Communities Inc.” The letterhead thus strongly suggests that WCI stands for that company's initials.

. “Waterpark Towers Condominium” was the name first used for what eventually became "Cap d'Antibes.”

. Had we disagreed with the trial court and concluded that WCI Watermark Communities Inc. was a successor, we still would have found sufficient support in the record for the trial court's further finding that the February 21, 2000, letter did not constitute written approval of any reduction in the setback requirements required by the restrictive covenant.