ON MOTION FOR REHEARING

SHEPHERD, J.
We grant the motion for rehearing, withdraw the opinion issued April 11, 2012, and substitute the following opinion.
We affirm the opinion of the trial judge, upon which we cannot improve and therefore adopt en haec verba:

FINAL JUDGMENT

THIS MATTER came before the Court for trial by the Court on November 16 — 17, 2010, and the Court, having conducted a trial of the issues presented, having taken testimony and received evidence, having weighed the evidence and testimony and having assigned such weight to each. piece of evidence, and such credibility to each piece of testimony as is appropriate, hereby FINDS and ORDERS as follows:
1.The BLUEWATER KEY RV OWNERSHIP PARK (“PARK”) is composed' of 81 individual lots, landscaped with utility services, including wáter, electric, and cable television, in Monroe County, Florida. The park also contains recreational facilities on commonly owned property, including the pool and clubhouse. The BLUEWA-TER KEY RV OWNERSHIP PARK PROPERTY OWNERS AS- ' SOCIATION, INC. (“ASSOCIATION”), was formed pursuant to Articles of Incorporation filed with the Florida Department of State on or about August 3, 1989, It is a not-for-profit corporation created under the: authority of Chapter 617, Florida ■ • Statutes. Consistent therewith, the ASSOCIATION’S Articles of Incorporation contemplate no pecuniary gain or profit to the members, and allow no distribution of income to members, directors or officers. (Articles of Incorporation, Article IV).' ' '
2. No full time or permanent residential use of the lots is allowed. Owners may use their own lot, allow them to be. used by family or friends, or rent them out%
3. ' To facilitate Short term rentals, the ASSOCIATION created a “rental program,” which is a voluntary program allowing-lot owners to rent their lots through the PARK’S “rental program” or they may rent ■ their lots independently, by themselves or with the help of other professional management. The ASSOCIATION’S rental program charges a 15% fee on-, the rental income for the services • provided, which money is deposited into the PROPERTY ASSOCIATION’S bank account. The PROPERTY ASSOCIATION distributes 85% of the rental income to the respective lot owners,' and deposits the remaining 15% of rental income into the ASSOCIATION’S operating account from which general expenses are paid. . The 85% of revenue that “passes through” from the PROPERTY ASSOCIATION to the respective lot owners is not income or profit to the PROPERTY ASSOCIATION. It is the-return of net revenue to the owners of the lots. The ASSOCIATION does not own the lots in question, nor is it a business partner, with the owners, *61 and accordingly, the Court finds that the .ASSOCIATION simply acts as an agent of the owners in collecting gross revenues, retaining the management fee of 15%, and paying through the net revenue of 85% to the lot owners in question.
4. On April 17, 2007, the PROPERTY ASSOCIATION passed three resolutions, which have been received in evidence by this Court as Plaintiffs Exhibits 1,2 and 3.
5. Resolution 1 establishes rules and regulations for the rental of lots in the PARK and was grounded in the authority of Article VII, Section 14 of the Declaration of Covenants and Restrictions, Article VII, Section 14 of the Declaration provides:
a. "Leasing: No lot shall be leased or rented by an owner except as provided by the reasonable rules, regulations and procedures promulgat- , ed.by the ASSOCIATION.”
,6. Resolution 1 requires all owners of lots in the PARK who lease/rent or allow use of their lot by a non-owner to pay a special assessment in the nature of a user fee to the ASSOCIATION, and the failure to pay the non-owner user fees result in subjecting the owner of the lot to non-payment remedies, set forth in Article V, Section 8 of the Declaration.
7..Resolution 2 establishes special assessment user fees for the PARK of $11,00 per day for each lot in the PARK leased or used by a non- . owner. Lot owners choosing to participate in the PARK’S voluntary rental program have the $11.00 per day special assessment user fee paid from the 15% rental commission that they have agreed to under the- rental program. Those choosing not to participate in 'the rental program must pay the $11.00 per day special assessment user fee independently.
8. Resolution 8 establishes fines and penalties for violation of rules , and regulations adopted by the Board.
9. Subsequent to the effective dates of these resolutions, Plaintiffs rented their lots through Plaintiff RITA CLARK, who operates an independent management business, to manage some of the lot rentals in the PARK. ■ These Plaintiffs who have rented through Mrs. CLARK have been invoiced for the special assessment user fees, but have failed to. pay those fees, and the total unpaid special assessment user fees owned by the Plaintiff from the inception of the fee to October, 2010, has been calculated ■ by the ASSOCIATION at $75,766.25 in total, and has been broken down as to each Plaintiff as set forth in Paragraph 68 of the Defendant’s closing argument. The ASSOCIATION has placed liens on Plaintiffs’ properties for ■ the failure to pay,
10.After carefully reviewing the evidence and the applicable law, the Court finds that the Resolutions in .■: -question are valid, The Court • . finds that these Resolutions do not constitute an amendment of the Articles of Incorporation, the Declaration, or the By-Laws, and accordingly, a 75% vote of the members was pot required for their passage. Specifically, the Resolutions in question did not amend or add to any particular use or occupancy rule set forth, in the Declaration, and therefore the Article XIV 75% requirement ■ is not applicable. *62 Rather, the Resolutions in question create or establish use and occupancy rules, pursuant to Article VII, Section 14 of the Declaration.[1 ]
11. The Court further finds from the evidence in this case that the PARK’S PROPERTY ASSOCIATION is fully authorized pursuant to the governing documents, to operate the rental program in question. Plaintiff’s suggestion that Article IV, Section 8 of the Declaration prohibits the ASSOCIATION from operating its own management program, misapprehends that particular section. Article IV, Section 6 is a grant of authority, not a limitation. The ASSOCIATION holds broad powers set forth in the Articles of Incorporation including all common law and statutory powers of a not-for-profit corporation not in conflict with the terms of the Declaration, the Articles, or the By-Laws. The Court finds that there is no conflict between the operation of a rental program as shown in the evidence, with the Declaration, the Articles or the By-Laws, and therefore the ASSOCIATION’S operation of the rental program is not altered by these, and is properly grounded within the governing documents.
12. The Court further finds that Plaintiffs’ estoppel argument must fail, because any purportedly inconsistent positions taken by prior boards of directors do not modify or amend the governing documents. Those documents remain the controlling authority, regardless of temporary changes in behavior by the elected Board.
13.Finally, the Court finds that the PROPERTY ASSOCIATION is not a “homeowners’ association” within the meaning of Chapter 720 Florida Statutes, because the PARK specifically prohibits mobile homes, permanent or semi-permanent structures, any structure designed, intended or used as permanent living quarters. The terms of Section 720.301 do not include this type of development, in that the function of the PARK is the use and rental of recreational vehicle lots, and does not include permanent residency. The fact that the PARK has chosen to use a Declaration of Covenants as a convenient legal vehicle to control usage of the lots does not necessitate a finding that Chapter 720 applies to this development. If the Legislature wishes to apply Chapter 720 to the factual premises set forth in this case, it certainly has the capacity to do so with clarity and specificity, but to imply or infer the limits on private property ownership which are established in the Florida Constitution have been limited by inference or implication, would be inap *63 propriate.[2]
14. Accordingly, for the reasons set forth above, it is hereby,
ADJUDGED and ORDERED as follows:
a. Judgment is hereby entered in favor of Defendant BLUEWATER KEY RV OWNERSHIP PARK, and against Plaintiffs, on each of Plaintiffs’ eleven causes of action, the Court finding that pursuant [to] the applicable law and the evidence produced at trial, Plaintiffs have failed to meet their burden of proving an entitlement, by a preponderance of the evidence, to the relief requested in its Complaint.
b. Judgment is hereby entered in favor of the Defendant ASSOCIATION and against Plaintiffs on Defendant’s Counter-claim. Judgment for damages is entered in favor of the Defendant ASSOCIATION and against the Plaintiffs for unpaid special assessment user fees in the following amounts: Lot 1 — $12,276.00 (Clark), Lot 2-$6,600 (Clark), Lot 3-$7,788.00 (Clark), Lot 4-$4,048.00 (Clark), Lot 6-$6,356.25 (O’Carroll), Lot 16-$7,854.00 (Clark), Lot 54-$6,512.00 (Ogle), Lot 78-$8,470.00 (Smith), Lot 80-$8,206.00 (Ogle), Lot 81-$7,656.00 (Ogle). The Court reserves jurisdiction to modify these amounts, to assess interest, penalties, attorney’s fees and costs, to the extent these amounts do not include those items. Counsel are directed to meet and confer regarding the final amount of the Judgment, and to submit an agreed calculation as to these amounts, failing which the Court will set an evidentiary hearing for a final determination of the amount of the Judgment on the counter-claim.
Affirmed.
WELLS, C.J., concurs.

. [Article VII, Section 14 of the Declaration reads as follows:
LEASING: No Lot shall be leased or rented by an Owner except as provided by the reasonable rules, regulations and procedures promulgated by the Association. In no event may the Association restrict the length of the term or duration of tenancy. The Association may make reasonable restrictions as to the type and size of RV Vehicles placed on the RV Park by Owner’s tenant. No Lot shall be leased or rented to any RV Vehicle that does not have its own self contained' toilet, bathing facilities, and cooking facilities. No Lot shall be leased for outdoor camping.]

. The State of Florida Department of Business and Professional Regulation appears to have come to the same conclusion as this Court in its finding in June 2006 that this Park is a luxury resort for RV’s which does not permit permanent living quarters and therefore no community association manager’s license was required under Chapter 720.