# Third District Court of Appeal

## State of Florida

Opinion filed May 10, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1645
Lower Tribunal No. 14-827-K
_____


**Rita Clark, et al.,**
Appellants,

vs.

**Bluewater Key RV Ownership Park Property Owners Association, Inc.,**
Appellee.


An Appeal from a non-final order from the Circuit Court for Monroe County, Mark H. Jones, Judge.

Easley Appellate Practice PLLC, and Dorothy F. Easley; The Smith Law Firm, Brett Tyler Smith and Wayne LaRue Smith, for appellants.

Lee Robert Rohe, for appellee.


Before LAGOA, SALTER and FERNANDEZ, JJ.

SALTER, J.

Rita Clark, Roland Clark, and David Glenz, defendants below, appeal a Final Judgment Granting Declaratory and Injunctive Relief entered against them by the Circuit Court for Monroe County in June 2016. The defendants own and control various lots within the Blue Water Key RV Ownership Park, in Saddlebunch Key. They operate a transient rental business for lots within the Park (referred to as the "Clark Rental Program"). The plaintiff below, appellee here, is Bluewater Key RV Ownership Park Property Owners Association, Inc. ("Association"), which has its own transient rental business (the "Association Rental Program").

Earlier litigation, and much of the history of the Park, the Association, and the competing transient rental programs, are detailed in Clark v. Bluewater Key RV Ownership Park, 197 So. 3d 59 (Fla. 3d DCA 2012) ("Clark I"). Two years after Clark I, the Association and the appellants (as lot owners and operators of Bluewater Rentals), were back in the trial court on competing claims regarding the 1989 recorded Declaration of Restrictions and Protective Covenants (the "Declaration") applicable to the Association and to all 81 lots and the common areas within the Park.

I.    The Amended Complaint and the Counterclaims

The Association filed its amended complaint for declaratory and injunctive relief in October 2014 against the Clarks and Glenz, alleging that the Clark Rental

Program violated the Declaration and Park Rules (enacted by the Association under Article VII, Section 14 of the Declaration). The Clark Rental Program managed some 21 rental lots for absentee owners, renting those lots to recreational vehicle owners visiting the Keys. The alleged violations included (1) the employment of workers who reside in the Park while engaged in prohibited "commercial activity" on those lots, (2) violations of Monroe County Code section 130-92(a)(1) prohibiting tenancies in excess of six months in a land use district classified as an RV Park, and (3) creating an annoyance or nuisance to other lot owners by using lots as staging areas, for stockpiling materials and supplies, and for storing equipment and tools utilized in the operation of the Clark Rental Program. The annoyance and nuisance allegations were based on complaints by lot owners regarding the noise of vehicles and transport of materials supporting the Clark Rental Program's maintenance, repair, and rental activities.

Rita Clark and Glenz each filed counterclaims for declaratory and injunctive relief against the Association. The counterclaims alleged that the Association selectively enforced the Declaration and Park Rules in order to drive the Clark Rental Program out of business, even though the Clark Rental Program office for reservations and rental activities was operated near, but outside, the Park lots and common areas.

3

Rita Clark and Glenz also alleged that the Association adopted rules to impose burdensome conditions on them (but not on the Association Rental Program) for employee background checks, and for bonding and insurance requirements. The counterclaims further asserted that the Association's Board had been reduced from seven to three directors in contravention of the Association's articles, such that the lawsuits initiated by the Association and other purported corporate actions were ultra vires and void. Finally, the counterclaims alleged that the Association violates its own rules, including the prohibition against "commercial activity," in the operation of the Association Rental Program and in providing housing to employees within the Park. The declaratory and injunctive relief sought in Glenz's counterclaim includes attorney's fees, but not money damages. Clark's counterclaim includes additional counts for tortious interference with advantageous business relationships and for unfair trade practices under Chapter 501, Florida Statutes (2014), the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

## II.    Trial and Final Judgment on the Association Claims

The trial court tried the Association's non-jury claims for declaratory and injunctive relief in March 2016. Documentary evidence and testimony established that the Clark Rental Program relied on "work campers" who received the free use of a lot in return for managing repairs, lot cleanup, and acting as an in-Park contact

4

for problems encountered by renters in the Clark Rental Program. The court found that this constituted "commercial activity" on lots within the Park in violation of the Declaration and Rules, and that the activity of the Clark Rental Program employees was also a nuisance in violation of Article VII, Section 5A of the Declaration.

After considering the affirmative defenses of the Clarks and Glenz in light of the evidence presented, the court found no basis for unclean hands, estoppel (including an estoppel alleged based on "selective enforcement in an arbitrary and capricious manner"), waiver, and laches. The court entered judgment in favor of the Association and against the defendants on the actions to enjoin a nuisance and commercial activity. The permanent injunction prohibited the defendants and those working for and through them (agents, servants, employees, etc.) from engaging in specified conduct:

a. Using any RV lot within Bluewater Park for housing employees, work campers, or anyone whose purpose is to serve in furthering Defendants' lot rental business.

b. Using any lot as a satellite office or main office to greet guests, make reservations, accept payment for lot rentals and golf cart rentals, transact business or to store lot maintenance tools, materials, golf carts, or other vehicles regardless of whether the lot is being used as a residence or sleeping quarters.

c. Using any lot to repair or maintain equipment, appliances, furnishings, or other personal property in furtherance of Defendants' lot rental business.

d. Violating Article VII, Section 2(h) of the Declaration of Restrictions and Protective Covenants.

e. Violating Article VII, Section 5 of the Declaration of Restrictions and Protective Covenants.

f. Placing signs or other forms of advertising for Defendants' rental business on Resort lots.

g. Storing or parking "work carts," trailers, or other vehicles overnight on any lot in furtherance of Defendants' lot rental business.

The Final Judgment stated clearly that the defendants "are not enjoined from renting their own lots" themselves or through any other property management business, so long as those activities do not violate the Declaration. The court also recognized that the process of renting the lots through any transient rental program "involves certain tasks such as, greeting and orienting renters, parking and hooking up RV's, doing maintenance and yardwork, and performing other related tasks. These tasks do not constitute commercial activity as long as done within the parameters of the Covenants and Rules." Recognizing that the injunction could not delineate every scenario that might arise, the court urged lot owners, Association members and officers, and the defendants to "employ common sense, reason, and courtesy when engaging in the rental process and when applying and enforcing the Covenants and Rules."

III. Analysis

6

The defendants appeal the entry of the injunction on four grounds: (1) that the trial court erred by conducting a bench trial on the Association's complaint "before the jury trial" on the counterclaims; (2) the court erred in its application of the Declaration liberally in favor of the Association and against the lot owners' "free and unrestricted use of the lots;" (3) the injunction for "mere annoyances" is error; and (4) as the complained-of activity has been ended and there is no real likelihood of recurrence, the permanent injunction is improper or overbroad, and a "work camper" is not a "nuisance" includible in the injunction. We address these in turn.

### (1) Bench Trial Before Jury Trial

As a threshold matter, our review of the record and the docket below does not reveal a demand for trial by jury by Rita Clark or Glenz in their counterclaims or other pleadings in conformance with Florida Rule of Civil Procedure 1.430. During a hearing on September 8, 2015, on the Association's motion for separate trials, defense counsel stated that a jury trial had been demanded, but we have not been able to locate such a demand in any pleading or docket entry.[1]

---

[1] Because this case comes to us as an appeal from a non-final order under Florida Rule of Appellate Procedure 9.130(a)(3)(B) relating to injunctions, the parties have filed appendices rather than a complete appellate record. A review of the Monroe Circuit Court docket for the case, however, does not disclose a demand for jury trial filed separately from the amended complaint, counterclaims, answers, and affirmative defenses in the appendices.

If a timely, written demand is shown to have been made, the issues can be tried separately unless the factual issues are so interrelated that the severance of the equitable and legal claims risks inconsistent outcomes. Kavouras v. Mario City Restaurant Corp., 88 So. 3d 213, 214 (Fla. 3d DCA 2011). But otherwise, the decision to sever claims and conduct separate trials pursuant to Florida Rule of Civil Procedure 1.270(b) is within the trial court's discretion. Bethany Evangelical Covenant Church of Miami, Florida, Inc. v. Calandra, 994 So. 2d 478, 479 (Fla. 3d DCA 2008).

A review of the claims and counterclaims in the present case discloses distinct, rather than intertwined, claims and issues. The Association's claims for injunctive relief are pursued on behalf of all lot owners (as to the alleged "commercial activity" violations of the Declaration) and certain individual complainants occupying lots who are annoyed by noise and other disruption arising to the level of an alleged nuisance. These are classic equitable claims for the violation of restrictive covenants within a neighborhood.

The counterclaims of Glenz and Rita Clark are significantly different. Glenz seeks only declaratory relief, not money damages for tortious interference and FDUTPA violations. Some of the declarations sought by Glenz involve the lawsuits brought by the Association against Monroe County and another regarding

8

rights to a trademark. These are not factual or legal issues intertwined with the restrictive covenant and nuisance claims.

Glenz's other claims for declaratory relief involve the Association's compliance with its own bylaws and articles in initiating the lawsuit against the Clarks and Glenz. A review of those claims does not reveal any issues of fact triable to a jury, however, as those issues are governed by the written documents and Chapter 617, Florida Statutes (2014), governing corporations not for profit. Each such claim was also raised as an equitable defense to the Association's amended complaint, and (to the extent presented to the trial court) was considered.

Turning to the counterclaims of Rita Clark, Count I is essentially identical to Glenz's counterclaim for declaratory relief, does not present factual issues as opposed to legal issues, and was considered by the trial court to the extent presented as an affirmative defense to the entry of the injunction. Count II, tortious interference with advantageous business relationships, and Count III, for alleged violations of FDUTPA, are counterclaims which seek to establish torts, unfair business practices, and statutory violations by the Association over a longer period ("over the course of the past fifteen years") and regarding the Association's separate rental program—not the Association's enforcement of the restrictive covenants in the Declaration. The alleged actions by individuals in control of the Association, "motivated by malice and animosity" to "destroy Defendant Rita

Clark's Clark Rental Program" are a far more complex set of claims involving different elements of proof (including money damages) rather than compliance or non-compliance with restrictive covenants.

Expressed another way, the Association's motivation in the enforcement of a clear legal right under the Declaration is irrelevant to the other disputes raised in the counterclaims. If Rita Clark is concerned that the Association is engaging in commercial activity on other lots or common areas in connection with the Association's management of its rental program, and if she alleges that those activities violate the Declaration, there is no apparent impediment to her commencement of a suit for an injunction to prohibit such activities. Her counterclaims and prayers for relief, however, include no such claim for injunctive relief.

For these reasons, we find no abuse of discretion or legal error in the trial court's decision to conduct a separate bench trial on the Association's claims for injunctive relief before addressing the tortious interference and FDUTPA claims. And for the sake of emphasis, we remind the parties that those "Phase II" claims may or may not be triable to a jury, dependent on the trial court's subsequent review of the complete docket.

(2) Construction of the Terms in the Declaration

Our consideration of this argument by the defendants/appellants is subject to de novo review. Gem Estates Mobile Home Vill. Ass'n v. Bluhm, 885 So. 2d 435, 437 (Fla. 4th DCA 2004) (citing Klak v. Eagles' Reserve Homeowners' Ass'n, 862 So. 2d 947, 954 (Fla. 2d DCA 2004)). When interpreting restrictive covenants, the courts "should give effect to the commonly understood meaning of the words of the pertinent provisions." Gem Estates, 885 So. 2d at 437. Such covenants are to be strictly construed in favor of the free use of real property, and substantial ambiguities must be construed against the party claiming the right to enforce the covenant. Washington Apartment Hotel Co. v. Schneider, 75 So. 2d 907, 908 (Fla. 1954) (citing Moore v. Stevens, 90 Fla. 879, 885, 106 So. 901, 904 (Fla. 1925)). However, these provisions should not be construed in a manner which defeats the intent and obvious purpose of the restriction. McMillan v. Oaks of Spring Hill Homeowner's Ass'n, Inc., 754 So. 2d 160, 162 (Fla. 5th DCA 2000).

Black's Law Dictionary, 10th ed., defines commercial activity as an "activity, such as operating a business, conducted to make a profit." The restrictive covenant at issue prohibits commercial activity "including the use of any lot for a home occupation or profession." Although the Declaration and restrictive covenants are silent as to whether the lots may be rented to "work campers," the intent of the restrictive covenant is expressed in Article VII, section 2, of the Declaration: "to maintain the RV Park as an exclusive luxury resort to be

11

used soley [sic] for recreational vehicles . . . It is the intent hereof to prohibit mobil [sic] homes and/or permanent or semi permanent structures. . . ."

Clark's and Mr. Glenz's rental of their lots to work campers violates the restrictive covenant because that is not a recreational use, but is instead to further the for-profit Clark's Rental Program business. While certain tasks such as helping clients arrive at their rented lot need to occur in the Park,[2] other tasks—such as conducting extensive repairs and allowing workers to live on and work from the lot—go beyond the provisions within the Declaration and restrictive covenants. Further, the record shows that work campers (Pete Hermansen, for example) repaired business equipment and stored tools and equipment (such as a power washer, ladder, and golf carts) on the lots. These activities assist Clark's business and her ability to profit from the rental program; therefore, they constitute the commercial activity that the restrictive covenants clearly prohibit. Moss v. Inverness Highlands South and West Civic Ass'n, Inc., 521 So. 2d 359 (Fla. 5th DCA 1988), relied upon by the Clarks and Glenz, is distinguishable (the fact that a homeowner received rental income and made a profit from sharing her home with elderly people did not violate the covenant's restriction that property can only be used for residential purposes).

---

[2] As noted, the trial court recognized that these types of tasks "do not constitute commercial activity as long as done within the parameters of the Covenants and Rules."

Moreover, there is no ambiguity in the restrictive covenant. The covenant's intent is clear that Clark (and other lot owners) may not rent lots to individuals who conduct business on the lots within the Resort. James v. Smith, 537 So. 2d 1074, 1076–77 (Fla. 5th DCA 1989), cited by the Clarks and Glenz, is distinguishable on this point (the restrictive covenant in that case prohibited raising horses on the lot, but the exclusion regarding "domestic pets" was ambiguous as the defendants owned two ponies, and horses can be considered domestic pets). Thus, the trial court correctly found that Clark's activities violate the restrictive covenant.

The argument that the Association's conduct is inconsistent with its own application and enforcement of the Declaration is also unavailing, as already noted. If the Association's transient rental program relies on work campers on lots within the Park, lot owners within the Association are entitled to invoke the provisions of the Declaration and to seek injunctive relief (though we express no opinion regarding the merits of such a future claim or the particular facts that might relate to it). The trial court's findings and legal conclusions regarding the affirmative defenses raised by the Clarks and Glenz (waiver, estoppel, and unclean hands) were detailed and were supported by the evidence at trial, the provisions of the Declaration, and well-settled law.

(3) "Mere Annoyances" versus "Actionable Nuisance"

13

Article VII, section 5A, of the Declaration prohibits "anything" constituting an annoyance or nuisance to the neighborhood or any other lot owner. Under the case law applicable to claims for injunctive relief to abate a nuisance, the trial court applied an objective standard comparable to the objective standard applicable to a claim of negligence. Bechold v. Mariner Props., Inc., 576 So. 2d 921, 923 (Fla. 2d DCA 1991); Beckman v. Marshall, 85 So. 2d 552, 555 (Fla. 1956).

However, "[m]ere disturbance and annoyance as such do not in themselves necessarily give rise to an invasion of a legal right." A. & P. Food Stores, Inc. v. Kornstein, 121 So. 2d 701, 703 (Fla. 3d DCA 1960). Plainly, the application of these standards presents an evidentiary issue, and the trial court's findings on the issue were supported by substantial competent evidence.

### (4) Future Activity—Is the Permanent Injunction Overbroad?

The Clarks and Glenz assert that the complained-of activities were abruptly ended, and that there is no real likelihood the conduct will occur in the future. They maintain that the scope of the permanent injunction is improperly broad. We disagree. The trial court's ten-page final judgment was carefully tailored.

In paragraph 4 of the final judgment, the trial court found that the defendants and other lot owners were not enjoined from renting their own lots themselves, through the Clark Rental Program, or through some other property management business, so long as they do not violate specific provisions of the Declaration. In

14

paragraph 5, the trial court listed activities which both the Association Rental Program and the Clark Rental Program could conduct without constituting "commercial activity," if done within the parameters of the Declaration.

IV.    Conclusion

To the extent that the trial judge's decision to grant a permanent injunction rests on questions of fact, the standard of review is an abuse of discretion. Carricarte v. Carricarte, 961 So. 2d 1019, 1020 (Fla. 3d DCA 2007); see also Gulf Bay Land Invs., Inc. v. Trecker, 955 So. 2d 1157, 1159 (Fla. 2d DCA 2007).  A trial court may grant injunctive relief to redress violations of a restrictive covenant affecting real property without proof of irreparable harm.  Autozone Stores, Inc. v. Ne. Plaza Venture, LLC, 934 So. 2d 670, 673 (Fla. 2d DCA 2006).  Evidence showing the violation is sufficient for a trial court to grant an injunction.  Id. at 674.

In the present case, and for all these reasons, we affirm the Final Judgment Granting Declaratory and Injunctive Relief.